This time we will hear from Ms. Goldberg. It pleases the court, Julie Goldberg for appellant. We would ask this court to remand our case back to the district court for both a further investigation of the legal and the factual issues in this case that we believe were not addressed by the court. Now you've said some things in your brief that give me some pause. And the first is your characterization of the underlying reason why in this instance the Jerusalem consulate chose not to grant this petition. He pronounces Mr. Ganim when he was 13 was throwing rocks at Israeli soldiers. And so you say, oh, throwing rocks. Except throwing rocks could be also characterized as stoning. I mean, sometimes throwing rocks can be an extremely serious, indeed lethal, action. There have been videos that have gone viral on the Internet about horrible situations. I have found out. One well-placed rock. But my main point is a serious one, that the record tells me nothing about what this actually was, whether he picked up a handful of sand and there were some pebbles in it, or whether he was really throwing rocks that could have hurt another person. What kind of throwing arm did he have at the age of 13? So it could be serious activity. And if the consular official in Jerusalem saw that this apparently uncontested form of behavior is what had gone on, why is that not a rash? Even if we were reviewing it along all these lines we've just been talking about, why wouldn't we say that this is serious enough to stop? So I think that brings up two points for me. First of all, that this case really, really needs more review down below to filter out those facts. But for the court, the same information that was before the counsel was there when they specifically made the decision and found him inadmissible because of his previous deportation. And they had all these facts in front of them and did not find him inadmissible under the terrorist statute. Were they considering the terrorist statute at that point? No, they don't even cite it. That's right, because I'm saying this is an agency that thinks in silos, right? They had one issue in front of them and one issue was all they thought about as far as I could tell. Actually, I think it was worse than that because my office had evidence that any time we complained to Jerusalem Embassy, and my office is very intimately involved with the embassies. I've just spent two years in Africa working with the embassy over there. I really have a familiarity of how these embassies operate. And Jerusalem has a habit of every time you complain about a delay, file a writ, or threaten to file a writ, their response, specifically when they're dealing with people from the West Bank or Gaza, obviously not Israel, their response is to automatically cite this terrorist statute because I think they believe that there's absolutely no review of it. So what was interesting is... So in other words, you're accusing, I don't know whether you're accusing this case of bad faith. I think there's a lot of bad faith that we didn't get. Yeah, that's where you're going. So in getting to the idea of what this 13-year-old child did, he was in the United States and he was afraid to go back to the West Bank. And he had an attorney who advised him that his claim for asylum was not strong enough. And so the attorney, and we filed a Lozada claim on this on our appeal for the waivers, and the attorney advised him that he needed to come up with more facts. Well, the more facts were the idea that he led these protests and throwing stones. Good or bad or indifferent, we're talking about a teenager at the time that's being influenced by an attorney in Chicago. And like I said, we have filed this Lozada claim. So these facts were already before the immigration judge. And the immigration judge not only didn't, when he was in the United States, did not find him barred from asylum because he had committed a terrorist act or belonged to a terrorist organization. He found him to not have been credible to throwing those stones at 13. So are you saying we have conflicting administrative findings? Yes. Okay. He's not in the United States right now, is that correct? He's not. He is in the position where he was deported. His asylum was denied because it wasn't credible. And he was removed back. And at the point, he had left a wife here. And so we went through proper procedures to file the I-130. And like I said, these facts, not only is there conflicting testimony, these facts were before the counsel when he made this decision. And it wasn't until two years later when we complained, hey, this case is taking too long. You need to make a decision one way or the other. And if you don't, we're going to file a writ of mandamus, that they came back and said, oh, sorry, he's now not admissible under the terrorist statute. So getting back to what I was saying about remand is I believe that there are a lot of legal issues, especially given that we filed our complaint, we relied on the law for the Ninth Circuit in Dinh, and the Supreme Court hadn't made their decision. And whatever you do with that decision, we should have had the opportunity to, at a minimum, amend our complaint to include some of that new law or at least respond to the government's motion to dismiss. The motion to dismiss was filed on the 18th. I was in Africa dealing with an emergency case for a U.S. citizen, and we were given three days in which to respond to that because the local court rule is we are required to submit a brief two days prior to presentment. Presentment was on the 26th. It was physically impossible for me to come back to Africa. The judge's own rules said that — And the judge had notice as to your situation. Pardon? The judge had notice as to your situation — He did. They filed their motion to dismiss on the 18th. By the 20th, because there's limited communication because I'm at a refugee camp, my office had submitted a request for continuance. It's even more important to note that in his own personal rules, he said before you can submit a motion, you need to reach out to the government, get their agreement, because in most cases, it's going to prevent you from having to appear. The government had basically received two continuance. One we got for them because they hadn't entered an appearance, and the second one, they asked for more time to answer. When they did that, there was some concern, and counsel noted in our email, listen, we know counsel's going to be overseas. If you're going to need more time to respond when we answer, we are going to be willing to give it to you. So given that information and the fact that we were timely in asking for a motion, it was the very first one we had asked for, we should have been given an opportunity to have a motion to continue to brief not only the legal, the factual issues, or at least amend the complaint. If I may quickly, really quick, the other thing is, and I think the Amicare briefed it much more thoroughly than we did, but I think there are two issues. There's the idea of constitutional issues, which I think are definitely limited to bad faith, which I think we could have pled, and I also think there's the other cause of action under the APA, and when you ask about, you would ask in the previous case, how are these issues handled if there's just sloppy adjudication? And I believe that those claims can be addressed under the APA. I mean, one thing about, one thing that it specifically says, and it says. Did you waive any APA claim? No, we pled the APA claims. And the judge, that's another thing, is in the motion to dismiss that wasn't addressed, he strictly dismissed this on a jurisdictional issue, saying, Din versus Kerry, I don't have jurisdiction. He never addressed the APA. But the judge, the judgment in this case says that the suit is dismissed with prejudice. That's a decision on the merits. The end of the judge's short opinion says dismissed with prejudice. The judgment says dismissed with prejudice. I don't see any dismissal here for lack of jurisdiction. Well, yes, I would agree he's dismissed with prejudice, and I think. Okay, so it was dismissed on the merits and not for lack of jurisdiction. Okay. That's just what happened. Except for, I'd like to bring two points up. This court remanded in Bosch versus Starker Corp, it said it's an unusual step, dismissing and entering a final judgment without allowing at least an opportunity to amend. So even taking that position, we would ask this court that we should allow one opportunity to amend. Okay, you can save the rest of your time. That would be fine. Mr. Riedel. Riedel. Good morning, Your Honors. May it please the Court, Gary Riedel, appearing on behalf of appellees of the U.S. Department of State. The district court correctly noted that the Supreme Court's decision in Kerry v. Binn is, quote, I'm not sure it is, actually, though. There is an allegation. Justice Kennedy says that in the absence of an allegation of bad faith, a certain thing follows. And I take it that our plaintiff is attempting to allege bad faith. So how is Justice Kennedy's opinion dispositive? Now, you might say the allegation of bad faith is not well taken, it's not adequate, or it isn't supported. But if there's an allegation of bad faith, Justice Kennedy is telling you his opinion drops out. And then we're, you know, who knows? We've got Kleindienst against Mandel. We've got seven other justices. Yes, Your Honor. There is, even if Ms. Hazama has a right to judicial review, the visa refusal was facially legitimate and bona fide because Ms. asked about faith. The question I'm trying to frame is, what happens when there is an allegation of bad faith? This was a trumped-up reason. It was not such an allegation in the last case because the consular officer at least had an indictment to act on. Here we seem to have that allegation. And it does seem to drop Justice Kennedy's opinion out. Your Honor, for three reasons, there's not a proper showing of bad faith affirmatively. Allegation, you mean to say. There's not bad faith affirmatively demonstrated plausibly. No, you don't affirmatively demonstrate something in a complaint. You allege something in a complaint. So your argument would be that the allegations, if you just take them seriously, are legally insufficient? Your Honor, number one, for three reasons, Ms. Hazama's claim fails. First, there is no allegation of bad faith on the part of the consular officer in the appellate record. Second of all. Look, if it's in the complaint, it's in the appellate record. Your Honor, in the complaint, Ms. Hazama, from the beginning of this case, starting with her complaint, has failed to sufficiently allege bad faith. In the complaint, she mentions in two paragraphs in passing that the consular officer's refusal was having bad faith. I just want to be sure I understand it. You're now making a Twombly argument that the complaint alleges bad faith, that it is not plausible? It's insufficient, and even if it were, even if she had. Look, I'm using magic language because it's important under the Supreme Court's cases. The standard articulated in Twombly is whether the allegation is plausible. So is it your argument that although it's true, there is an allegation of bad faith that is not plausible? Your Honor, it is our position that the allegation of bad faith is neither sufficient, is sufficiently pled with sufficient particularity, and also is not plausible. You don't have to plead bad faith with particularity. Rule 9 says that states of mind may be alleged generally. So I'm asking a concrete question. Are you saying in the language of Twombly that the allegation is not plausible? Yes. I wish you'd address that question. Yes, Your Honor. Yes. What do you do then with paragraph 37, which says, the decision entered by the United States consulate in Jerusalem was not made in good faith? And then it goes on in paragraph 38 to say, the United States consulate in Jerusalem has failed to issue a facially legitimate and bona fide reason for denying the plaintiff's immigrant visa application. And I won't read all of the other parts, but the complaint seems to allege bad faith. I don't know what's unclear about the paragraph I just read. Even if Ms. Hazama has sufficiently alleged bad faith. All right. Now you've moved on from what you were talking about. She fails to meet the high standard of bad faith in the context of visa reform. What high standard of bad faith? Where does that come from? No. Rule 9 says states of mind may be alleged generally. Right? Fraud has to be alleged with particularity. There's a list of things in the rule that have to be alleged with particularity. And bad faith is not on that list. So why is there a high standard? Your Honor. Of pleading. I mean, we're actually just talking about getting the case going. We're arguing a pleading standard. Not talking about. And it's actually resolved by things in the rule. Rule 9 lists things that have to be pleaded with particularity and tells us that state of mind is not on that list. Your Honor, under the doctrine of consular non-reviewability, which has been upheld repeatedly by the Supreme Court. That's a substantive doctrine. It's not a pleading doctrine. So what you want to talk about is whether you're going to win this case in the end based on some ground. But we've been trying to deal with everything from Kerry against Dinn to Kleindienst to, you know, whose opinion. And at least under some views of the law, whether the consular decision is made in good faith or bad faith has an effect on the way the doctrine of consular non-reviewability operates. It's not a doctrine that all justices on the Supreme Court would say applies no matter how bad the faith of the consular officer may be and so on. In other words, there are some limits. There's another way to put this. We know from five justices in Dinn that the effect of Kleindienst against Mandel is you don't look past the consular officer's reason unless it was in bad faith. And bad faith has not been demonstrated in this case. You don't demonstrate things in complaints. You demonstrate things on the record. The question for complaints is whether the allegation is plausible, and you haven't been willing to engage that question. This allegation of bad faith in the complaint is not plausible, Your Honor. All she says twice, or I believe paragraph 68 or 69 as well, she just references in passing that this was not, the refusal was not in good faith. Ms. Hazama failed to. But she has a big windup to that about all the back and forth that goes on and this timing issue that she was just talking about, all these requests for information, repeated evidence requests. You know, there's, it's not just sort of a, maybe it would be enough for it to say the paragraph 37 that I read to you, but there is actually quite a bit more. Your Honor, I'm unaware of any court, district court or appellate court, having found bad faith in the context of the visa refusal. Under these facts, under these facts. Under any facts. When I did a search, Your Honor, I was unable to find a case involving a doctrine of counselor non-reviewability, where a court found that bad faith, and a counselor officer had refused a visa on bad faith. But you need to, first of all, you need to remember the language in Klein Deeds against Mandel, the justice that Judge Easterbrook just referred to. And secondly, when you do those searches, it's awfully important to distinguish between the 12B6s, the summary judgments, things that are resolved. I mean, very few things are resolved on the basis of full proceedings anyway, but if there were one, those proceedings. So it really makes a big difference. Your Honor, even if the government moved to dismiss the complaint under 12B1 and 12B6 grounds, the court dismissed it under 12B1 grounds. Except that Judge Easterbrook has pointed out. Except that it didn't. It says it's dismissed with prejudice, which is not a 12B1 outcome. It's not a 12B1 dismissal. Earlier on page 1, I believe it. I don't care what it said on page 1. I care what it said in the judgment, which is dismissed with prejudice. We review judgments, and this is a judgment dismissing a complaint with prejudice. On page 1, it said that the government moved for a dismissal on B1 grounds, and the court, and then the next sentence says, and the court grants the government's motion. But it didn't. But what it did isn't a correct outcome for a jurisdictional dismissal. A jurisdictional dismissal just means we can't say anything about this. Maybe somebody else can somewhere, maybe an agency, maybe they can't. But we, the court, have no authority to speak. And that's not a dismissal with prejudice. It's not a ruling one way or the other on the merit of a case. Your Honor, even if the ---- And actually, your colleague expressed the opinion it didn't make much difference. Correct, Your Honor. Whether it was a 12B6 or a 12B1. Correct, Your Honor. I mean, the government moved. Move in that direction. The government moved under B1 and B6 grounds, moved to dismiss. But the important thing is that Ms. Hazama has not alleged or properly shown, sufficiently shown, bad faith. The doctrine of consular non-reviewability protects the consular officer's decision-making process from judicial review. A court is prohibited from looking behind that decision. With some exceptions, though. I mean, you're running out of time, so I think if you want to wrap up. Because this was denied under A3B grounds, the exact same ground as DEN, Your Honor, a terrorism ground. Under 8 U.S.C. 11B3, such a decision does not require any written notice. All right. Let me give you one example. This isn't quite on point. But you seem to think that to say the terrorism ground is some sort of magic thing. And I will remind you, in a similar situation, the chemical weapons convention. The Supreme Court decided a case a couple of years ago called Bond against the United States where a wife who was angry at her husband put some chemical substance, I think on a doorknob or something, and got prosecuted for violating the chemical weapons convention. And the Supreme Court basically said, oh, come on. You know, this is way overdoing it. And so if you want to call every, you know, effort of throwing a stone at somebody, if it's on the West Bank terrorism, I suppose you can. But Bond seems to suggest that we want to be a little bit more careful with our use of these very powerful theories. If I may, just very briefly. It is speculation to assume that the sole and perhaps only basis, the sole and perhaps the basis for the visa refusal under A3B was rock thrown. But that's what we've been told. No, no, no, no, Your Honor. That is, number one, not properly in the appellate record. And second of all, that information allegedly comes from USCIS, which has no role in visa adjudications, which is not a party to the proceedings, and was not privy to what the record and the information that the consular officer reviewed and considered. Under AUC 1201G3, if a consular officer has reason or knows or has reason to believe that a visa applicant is ineligible under A3B, then they're supposed to refuse the visa. We don't know what the consular officer believed or had reason to believe, what information the consular officer reviewed. Okay. I think we have the point. So thank you very much. Thank you, Your Honor. Yes. You have two minutes, Ms. Goldberg. So I'd like to address two points. One is, and we brought this briefly up in our complaint, is that before the judge was to grant the motion to dismiss, without any sort of response from us, or any discovery, anything, he needed to take our complaint as being true, as stated, and then move from there. If you do that, and you accept the fact that we've alleged bad faith, then there's no way to dismiss the complaint at this point. Or, in the alternative, if he didn't feel that we had plead enough facts based on bad faith, and given that we had the Dinn versus Carey decision in the Supreme Court, you know, maybe had we had that decision, we would have added in other facts. We should have been given one opportunity to amend. Counsel seems to represent that it's not plausible for the embassy to act in bad faith, and he says he can't find one case where the court has ever found that. I would mention to this court that the Senate Embassy was actually busted for government employees issuing visas to visitors in Texas, wrongfully, for a price of $50,000. So while other people, because they didn't have the time, if they weren't getting paid, were refued visas. So they operate in this place where there's just absolutely no review, and the idea that a counselor can have a decision made based on bad faith, or he's having a bad day, is definitely very plausible, and we did put that in our complaint. Even removing the idea that the counsel, it was USCIS that mentioned that the reason it was denied was for the rock throwing. Even if you remove that, then you even have less, and we still don't have any sort of reasoning to justify the bad faith on the part of the counselor. So I would ask that this case be remanded, that we be given an opportunity to amend our complaint, and also respond to the government's motion to dismiss. All right. Thank you, and thanks to the government. We will take the case under advisement.